Strafford
No. 97-663

THE STATE OF NEW HAMPSHIRE

v.

MARK J. HILTON

December 16, 1999

*Philip T. McLaughlin*, attorney general (*N. William Delker*, attorney, on the brief and orally), for the State.

*Behzad Mirhashem*, assistant appellate defender, of Concord, on the brief and orally, for the defendant.

BRODERICK, J. The defendant, Mark J. Hilton, was convicted of kidnapping, *see* RSA 633:1 (1996), and aggravated felonious sexual assault, *see* RSA 632-A:2 (1996) (amended 1998). On appeal, he challenges orders of the Superior Court (*Mohl*, J.), which denied his motions: (1) to depose the victim and the investigating police officers pursuant to RSA 517:13, II(b) (1997); (2) for a bill of particulars; and (3) to allow access to the victim's therapy records. The defendant also argues that, even if the records were properly withheld from trial counsel, they should have been disclosed to appellate counsel. We affirm.

Viewed most favorably to the State, the evidence at trial supports the following facts. On April 4, 1996, at approximately 7:00 p.m., the victim left work and walked to her car. As she neared her car, the defendant walked toward her, placed himself directly behind her, and braced himself against her. The victim asked what he wanted; he replied, "What do you want?" The victim opened the car door slightly, but the defendant pulled the door all the way open. Confining the victim between the door and the car body, the defendant placed one hand across her breast, reached under her coat, up her skirt, and grabbed her crotch with the other hand. He then penetrated her vagina through her nylons with his finger, which he moved "back and forth." After the defendant threatened the victim, he forced her into the car.

The defendant crawled into the passenger's seat and ordered the victim to drive him to Portsmouth. When she refused, he ordered her to drop him off at "the pike." Fearing for her safety, she pulled into a gas station, jumped from the car and screamed for help. The defendant then ran from the scene. Later that night, the victim gave a written statement to police but did not mention that she had been digitally penetrated. She did, however, make clear that the defendant touched her breast and grabbed her crotch. In the ensuing months, she identified the defendant as her assailant, and he was indicted for kidnapping. The defendant sought a bill of particulars because the indictment, which alleged that he confined the victim "with the purpose of committing a sexual assault or other act of lewdness," failed to identify the specific offense he intended to commit. He also sought to depose the victim regarding her identification, and her description of his unprivileged sexual contact. The trial court denied both motions.

In two interviews subsequent to her initial statement to the police, the victim revealed that the defendant had digitally penetrated her. She first disclosed the penetration during an interview with her employer's workers' compensation carrier. In February 1997, she gave a more detailed statement to the prosecutor. Based on her statements, the defendant was indicted for aggravated felonious sexual assault. See RSA 632-A:2. He renewed his motion to depose the victim and also sought to depose the police officers who initially interviewed her. He argued that the depositions were necessary to investigate the circumstances surrounding the delayed disclosure of digital penetration and to explore whether the police investigation should have elicited such conduct. The trial court denied the motion, ruling that the victim had not given inconsistent statements and that the State had immediately notified the defendant of the

penetration allegation and turned over all discovery material concerning it.

At trial, the defendant argued that any sexual penetration was incidental to the struggle, and therefore he lacked the requisite intent for aggravated felonious sexual assault. The victim, however, testified that the defendant's fingers partially penetrated her vagina, and moved in a "back and forth motion." The defendant observed at a bench conference that the prosecutor's interview notes did not indicate "anything about any moving back forth [*sic*] or lingering there." The defendant was convicted of kidnapping and aggravated felonious sexual assault.

I

On appeal, the defendant argues that the trial court should have allowed him to depose the victim and the police officers who interviewed her. RSA 517:13, II(b). He also argues that the victim's testimony at trial surprised him and compromised his ability to present his incidental contact defense.

A defendant has no unqualified due process right under either the State or Federal Constitution to compel depositions in criminal cases. *See State v. Haines*, 142 N.H. 692, 698, 709 A.2d 762, 765 (1998). The trial court, however, may allow a witness deposition upon a finding that the requested deposition is necessary "[t]o ensure a fair trial, avoid surprise, or for other good cause shown." RSA 517:13, II(b). Necessity should be evaluated based on "the complexity of the issues involved, other opportunities . . . available to discover the information sought . . . and any other special . . . circumstances." RSA 517:13. We evaluate the trial court's decision under an abuse of discretion standard. *See Haines*, 142 N.H. at 698, 709 A.2d at 766. To prevail on appeal, the defendant must show that the trial court's ruling denying the depositions was "clearly untenable or unreasonable to the prejudice of his case." *Id.* (quotation omitted).

The record demonstrates that the trial court weighed the statutory factors and properly ruled that the defendant had not met his burden of establishing necessity. *See State v. Chick*, 141 N.H. 503, 504, 688 A.2d 553, 555 (1996). Despite his claims to the contrary, the defendant had ample information to prepare his defense. He had access to (1) the victim's initial four-page statement to police, (2) the audio tape of the victim's statement to the workers' compensation carrier, and (3) the prosecutor's seven pages of handwritten interview notes. *See id.* at 505, 688 A.2d at 555. In addition, the State

turned over all discovery material in its possession concerning penetration. Thus, the defendant knew in advance of trial that the victim made several statements about the sexual assault, some of which included claims of sexual penetration, and also was aware of the victim's explanation for the apparent inconsistency between her first and subsequent descriptions of the assault. Specifically, the defendant knew that when the victim said in her first statement that he "grabbed [her] crotch," she believed she had communicated that digital penetration had occurred. *See State v. Rhoades*, 139 N.H. 432, 434-35, 655 A.2d 414, 415-16 (1995) (defendant's motion to depose a victim to explore inconsistencies in her statements denied because the defendant was aware of the inconsistency and the State had provided comprehensive, "open file" discovery).

■ The defendant also argues that the victim's testimony at trial on the "back and forth" movement of his finger surprised him and unfairly compromised his defense that any sexual penetration was incidental to the struggle. The information the defendant possessed before trial, however, belies this argument. The prosecutor's interview notes, for example, reflect the following observations about the attack:

> He put his hand across breast. Other hand went up skirt. Struggling. Up skirt and straight for home. Touched her private parts. He penetrated her — some sort of fabric penetrated her. This was while standing outside car. . . . Struggled for quite a few minutes. . . . Forced her into car laying down. . . . Hand still under skirt.

To claim that an incidental contact defense was warranted based on the victim's statements before trial but somehow vitiated by her more detailed description of penetration at trial is unpersuasive. The defendant was well informed before trial that the victim had reported sexual penetration and had provided descriptive detail. He also knew why she did not report it until her second statement to the police. The discovery materials, including the victim's account of the assault and kidnapping, gave the defendant sufficient notice that the evidence to be produced by the State at trial would be manifestly inconsistent with an unintended, incidental penetration defense. The very nature of the attack on the victim undermines such a theory, and depositions of the victim and police officers would not have changed that reality. Accordingly, the trial court acted within its discretion in denying the requested depositions.

## II

The defendant next argues that the trial court erred in denying his motion for a bill of particulars because the kidnapping indictment failed to identify the specific offense he intended to commit, thus preventing him from adequately preparing for trial. The State contends that the trial court did not abuse its discretion in denying defendant's motion because it is not required to include a specific intended offense in the indictment, and the indictment, as written, provided the defendant with sufficient notice of the crime charged.

■■ The purpose of an indictment is to notify the defendant of the charges he must be prepared to meet at trial and to protect him from being twice placed in jeopardy for the same offense. *See State v. Shute*, 122 N.H. 498, 504, 446 A.2d 1162, 1165 (1982). An indictment is constitutionally sufficient if "it gives the defendant enough information about the nature and cause of [an] accusation to allow him to prepare for trial." *Id.* A bill of particulars to clarify an indictment or complaint is only required where "necessary for the preparation of a defense or to preclude a later unconstitutional prosecution." *Chick*, 141 N.H. at 507, 688 A.2d at 556 (quotation omitted). A court's ruling denying a bill of particulars will be set aside only when it is clearly untenable or unreasonable to the prejudice of a defendant's case. *See State v. Voorhees*, 137 N.H. 650, 652, 632 A.2d 825, 826 (1993).

RSA 633:1 provides, in pertinent part, that "[a] person is guilty of kidnapping if he knowingly confines another under his control with a purpose to . . . [c]ommit an offense against him." The defendant contends that the indictment must specifically identify the "offense" he is charged with having a purpose to commit. We disagree. It is sufficient to allege, as was done here, that the defendant intended to commit a sexual assault or act of lewdness against his victim. *See State v. Chiasson*, 123 N.H. 17, 24, 458 A.2d 95, 99 (1983)(holding that indictment charging the defendant with burglary that alleged entry with purpose to commit "theft," a term which has several statutory definitions, was sufficient).

■ The indictment in this case provided sufficient notice to allow the defendant to prepare for trial. It alleged that the defendant "knowingly confine[d the victim] . . . with a purpose to commit . . . [either] a sexual assault or other act of lewdness . . . ." Both "lewdness" and "sexual assault" are either defined or described in the Criminal Code. *See* RSA 645:1, I (1996) (lewdness); RSA 632-A:4 (1996) (sexual assault). Accordingly, the defendant was on notice

that he was charged with a crime premised on the purpose to engage in a sexual assault or act of lewdness against the victim. A bill of particulars was unnecessary to allow proper preparation for trial, and the defendant articulates no prejudice.

## III

Finally, the defendant argues that the trial court should have disclosed the victim's counseling records following its *in camera* review, and that his appellate counsel should be allowed to examine the victim's counseling records to make an informed argument on appeal. Because the defendant did not brief his argument that the trial court erred in not disclosing the victim's counseling records prior to trial, the issue is waived. Accordingly, we address only his remaining argument.

The trial court must review confidential or privileged records *in camera* when a defendant establishes a reasonable probability that the records contain information material and relevant to his defense. *See State v. Gagne*, 136 N.H. 101, 105-06, 612 A.2d 899, 901 (1992); *State v. Cressey*, 137 N.H. 402, 413, 628 A.2d 696, 703-04 (1993). In this case, the defendant made that threshold showing, and the trial court conducted an *in camera* review. To protect the confidentiality of privileged records, and because the trial court does not require the aid of counsel to recognize discoverable evidence, the review is conducted by the trial court without the presence of counsel. *See Gagne*, 136 N.H. at 106, 612 A.2d at 902; *Pennsylvania v. Ritchie*, 480 U.S. 39, 60-61 (1987).

The defendant would have us develop a different rule for appellate counsel. We decline the invitation. *Cf. State v. Salentine*, 557 N.W.2d 439, 444 (Wis. Ct. App. 1996)(*in camera* review of confidential records by appeals court best balances interests of zealous advocacy and protecting confidentiality of privileged material). This court, like the trial court, can review a victim's counseling records *in camera* in a way that strikes an appropriate balance between protecting a victim's privacy and a defendant's right to information relevant and material to his defense. We are equipped to conduct this review without the aid of counsel to determine whether a defendant was improperly denied access to records that should have been disclosed.

*Affirmed.*

All concurred.